UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CFA, INC.,            ) | |
| )  | |
| *Plaintiff*          ) | |
| )  | Cause No. 1:22-cv-1575-RLM-TAB |
| v.              ) | |
| )  | |
| CONDUENT STATE & LOCAL     ) | |
| SOLUTIONS, INC.,         ) | |
| )  | |
| *Defendant*          ) | |

OPINION AND ORDER

CFA, Inc. sued Conduent State & Local Solutions, Inc. in Marion County
Superior Court, alleging breach of contract and unjust enrichment. Conduent
removed the case to federal court and moves to dismiss. CFA moves to exclude
materials Conduent attached to its reply brief. For the following reasons, the
court grants both motions.


I.    BACKGROUND

A court considering a Rule 12(b)(6) motion to dismiss assumes the
plaintiff's well-pleaded facts are true, views the allegations in the light most
favorable to the plaintiff, and draws all inferences in the plaintiff's
favor. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010).
CFA attached the contract between the State of Indiana and Conduent ("Prime
Contract") and the contract between CFA and Conduent ("Subcontract") to the
complaint. "A copy of a written instrument that is an exhibit to a pleading is a

1

part of the pleading for all purposes," Fed. R. Civ. P. 10, but if the "instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations," Est. of Eiteljorg ex rel. Eiteljorg v. Eiteljorg, 813 F. Supp. 2d 1069, 1080 (S.D. Ind. 2011) (quoting N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend, 163 F.3d 449, 454 (7th Cir. 1998)).

The Prime Contract provides that Conduent would provide staffing services to the Indiana Family and Social Services Administration.[1] It says the State awarded the Prime Contract to Conduent in part because of its Minority and/or Women's Business Enterprise ("MBE/WBE") participation plan. It lists CFA as an MBE/WBE subcontractor that would participate in 15.26 percent of services under the Prime Contract. The Prime Contract requires Conduent to submit copies of its agreements with MBE/WBE subcontractors to the State's Department of Administration, Division of Supplier Diversity. The Division of Supplier Diversity must review and approve any requests for changes to the MBE/WBE participation plan. Conduent's "failure to comply with the provisions in [the MBE/WBE] clause may be considered a material breach of the [Prime] Contract." [Doc. No. 1-2 at 25].

The complaint includes excerpts from the Division of Supplier Diversity's MBE/WBE policy statement, which says contractors must use MBE/WBE subcontractors at their committed participation percentages and outlines the

---

[1] The Prime Contract's forum selection clause selects Indiana law, excluding its choice of law rules.

2

procedures for modifying the MBE/WBE participation plan. Those procedures involve the subcontractor signing a notification document and the Division interviewing interested parties, including the subcontractor, to determine whether a change is appropriate.

Conduent and CFA entered into the Subcontract pursuant to the Prime Contract's directive.[2] The Subcontract says CFA will perform services under the Prime Contract for Conduent, as described in the Statement of Work. The Statement of Work provides that CFA (but not Conduent) must comply with the terms of the Prime Contract, and it incorporates particular parts of the Prime Contract by reference. The Subcontract doesn't explicitly include the 15.26 percent participation rate listed in the Prime Contract. The complaint alleges that the Subcontract incorporates that figure by reference because the Subcontract "is subordinate to the Prime Contract." [Doc. No. 1-2 at 4, 95].

The Subcontract provides that "Conduent has the primary responsibility for performance under the Prime Contract" and may perform, obtain from another entity, or otherwise remove any portion of the services being performed by CFA with 30 days' written notice to CFA. Id. at 95, 134. Conduent agrees to pay CFA based on CFA's invoices for services rendered and other pre-approved costs, subject to Conduent's approval. The Subcontract says it is the entire

---

[2] The Subcontract's forum selection clause selects New York law, excluding its choice of law rules.

agreement between the parties and supersedes any prior agreements that aren't specifically referenced and incorporated into the Subcontract.

CFA provided services as agreed, and, as of April 11, 2022, Conduent has paid CFA $18,642,710.97. CFA alleges that Conduent has received $188,837,021 under the Prime Contract, so CFA is entitled to 15.26 percent (which it calculates as $28,816,529.40). CFA alleges Conduent either performed services that should have been allocated to CFA, contracted the services out to another subcontractor, or a combination of the two, but did so without amending the Prime Contract's MBE/WBE participation plan or giving it 30 days' notice under the Subcontract.

CFA sent Conduent an invoice for the difference between the amount Conduent has paid and the amount it says Conduent owes. Conduent disputes that it owes CFA the money and has refused to pay. CFA sued, alleging breach of both the Prime Contract and Subcontract and unjust enrichment. After removing the case, Conduent moves to dismiss.

## II.   STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)), and raises

a right to relief above the speculative level, Bell Atl. Corp. v. Twombly, 550 U.S. at 555. A plaintiff's claim need only be plausible, not probable. Indep. Tr. Corp. v. Stewart Info. Servs. Corp., 665 F.3d 930, 934-935 (7th Cir. 2012). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" won't suffice. Id. (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

## III.   Discussion

### A. Conduent's Motion to Dismiss

Conduent says the court should dismiss each of CFA's claims.

#### CFA's Claim for Breach of the Prime Contract

Conduent argues that the court should dismiss CFA's breach of contract claim for the Prime Contract because CFA isn't a third-party beneficiary, so it doesn't have a right to enforce the Prime Contract.

"Under Indiana law, generally only parties to a contract have rights under the contract." Bowman v. Int'l Bus. Machs. Corp., 853 F. Supp. 2d 766, 769 (S.D. Ind. 2012) (citing Deckard v. Gen. Motors Corp., 307 F.3d 556, 561 (7th Cir. 2002)). A third party may enforce the contract if "(1) the parties to the contract intend to benefit [the] third party, (2) the contract imposes a duty on

one of the parties in favor of the third party, and (3) the performance of the terms of the contract directly benefits the third party." Id. (citing Deckard v. Gen. Motors Corp., 307 F.3d at 561).

"[T]he intent to benefit the third party is the controlling factor and may be shown by specifically naming the third party or by other evidence." Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., No. 1:15-cv-10-TWP-MJD, 2015 WL 5210668, at *8 (S.D. Ind. May 22, 2015) (alteration in original) (quoting Luhnow v. Horn, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001)), *R. & R. adopted as modified*, 2015 WL 5210539 (Sept. 3, 2015). "[I]t must appear that 'it was the intention of one of the parties to require performance of some part of it in favor of such third party and for his benefit, and that the other party to the agreement intended to assume the obligation thus imposed.'" Id. (quoting Cain v. Griffin, 849 N.E.2d 507, 514 (Ind. 2006)). "It is not enough that performance of the contract would be of benefit to the third party." Id. (quoting Cain v. Griffin, 849 N.E.2d at 514; *see* Centennial Mortg., Inc. v. Blumenfeld, 745 N.E.2d 268, 275-276 (Ind. Ct. App. 2001) ("A third party does not have the right to sue under a contract merely because he may derive an incidental benefit from the performance of the promisor." (citing Harvey v. Lowry, 183 N.E. 309, 311 (Ind. 1932)).

The intent "must affirmatively appear from the language of the instrument when properly interpreted and construed." Id. (quoting Cain v. Griffin, 849 N.E.2d at 514). "If the language of an alleged contract is ambiguous regarding

the parties' intent, the interpretation of the language is a question of fact which a [court] cannot properly determine on a motion to dismiss." Est. of Eiteljorg ex rel. Eiteljorg v. Eiteljorg, 813 F. Supp. 2d 1069, 1080 (S.D. Ind. 2011) (alteration in original) (quoting Dawson v. Gen. Motors Corp., 977 F.2d 369, 373 (7th Cir. 1992)).

In Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., the court determined that an MBE/WBE subcontractor listed in the defendant's participation plan didn't state a claim for breach of contract because it wasn't a third-party beneficiary to the prime contract. 2015 WL 5210668, at *18. The court concluded that the prime contract's specific reference to the subcontractor was relevant to the third-party beneficiary analysis, but it wasn't sufficient on its own to establish that the subcontractor was a third-party beneficiary. Id. at *8; see also ESG Tech. Servs., LLC v. Advantage Health Sols., Inc., No. 1:09-cv-30-TWP-TAB, 2011 WL 2267550, at *6 (S.D. Ind. June 6, 2011) (deciding on summary judgment that "[t]he fact that [plaintiff] is mentioned in the contract . . . does not establish an intent to benefit [plaintiff] as a third-party beneficiary; rather, naming a party is merely evidence of such an intent" (citations omitted)).

The complaint alleges that "[t]he Prime Contract is clearly intended by the named parties to benefit CFA. CFA is specifically named as a[n] MBE plan participant." [Doc. No. 1-2 at 6]. Under this court's precedent, this can't establish, at least on its own, that CFA is a third-party beneficiary.

CFA points to other factual allegations, but those don't lend it any support. First, it says it and Conduent successfully executed a subcontract, whereas the parties in <u>ESG</u> and <u>Bucher</u> didn't. CFA seems to argue that had there been subcontracts in those cases, the court would have found that the plaintiffs were third-party beneficiaries to the prime contracts. This reading is too great a stretch. The <u>ESG</u> court found the subcontract requirement showed that the contracting "parties did not intend to bestow third-party benefits on any of the subcontractors," and rather that further negotiation and contract formation was needed to establish the subcontractor's rights. <u>ESG Tech. Servs., LLC v. Advantage Health Sols., Inc.</u>, 2011 WL 2267550, at *7 ("Any contractual rights of the subcontractors would derive from being party to the subcontract and not from being a third-party beneficiary to the State contract."); *see* <u>Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc.</u>, 2015 WL 5210668, at *12. It would be inappropriate to read <u>ESG</u> or <u>Bucher</u> as implying that the execution of a subcontract would change the Prime Contract parties' intent.

Next, CFA says that the Prime Contract requires Conduent to get the State's approval to make any changes to MBE/WBE subcontracts. CFA notes that the prime contract in <u>ESG</u> didn't impose a formal process to amend subcontracts (although it did require the State's written approval), and the prime contract in <u>Bucher</u> gave the contractor "complete discretion to hire or fire subcontractors." [Doc. No. 13 at 13-14 (quoting <u>Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc.</u>, 2015 WL 5210668, at 11)]. Neither subcontractor had the right to object to changes to the participation plan. The

Prime Contract here requires the State's approval of any changes to the MBE/WBE section, and CFA alleges the procedures for getting that approval require giving CFA the opportunity to participate. *See* [Doc. No. 1-2 at 3 (citing Indiana Department of Administration MBE/WBE and IVOSB Participation Policy, DSD Compliance 100 rev. 4-21)].

CFA hasn't identified any language in the Prime Contract that incorporates the policy into the Prime Contract. *See* Care Grp. Heart Hosp., LLC v. Sawyer, 93 N.E.3d 745, 754-755 (Ind. 2018) ("For incorporation to occur, the incorporating contract must include a clear and explicit expression of intent to be bound by the auxiliary content." (citation omitted)). The Prime Contract's merger clause says that "[n]o understandings, agreements, or representations, oral or written, not specified within this Contract will be valid provisions of this Contract." [Doc. No. 1-2 at 25]; *see* Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., 2015 WL 5210668, at *15 (rejecting same argument). And, even if the policy was incorporated, "any duty imposed by the . . . policy was not imposed 'in favor of the third party.'" Id. (citation omitted).

CFA also points out that Conduent's "failure to comply with the provisions in the [MBE/WBE] clause may be considered a material breach of the [Prime] Contract." *See* [Doc. No. 1-2 at 25]. In Bucher, the court rejected an analogous argument that the penalty clause (which applied if the contractor didn't comply with the participation plan rates) showed an intent to benefit the subcontractors. Bucher & Christian Consulting, Inc. v. Novitex Enter. Sols., Inc., 2015 WL

9

5210668, at *9. The court concluded that the penalty provision showed an intent to advance the State's interest in supporting MBE/WBE businesses as a whole, not an intent to benefit the plaintiff as an individual MBE/WBE. Id. Although the Prime Contract's language is slightly different from the language at issue in Bucher, the court agrees with the reasoning there; this clause doesn't confer any rights on CFA or show an intent to benefit CFA.

The only evidence of an intent to benefit CFA in the Prime Contract is that CFA is listed as an MBE/WBE participant, which can't by itself establish that CFA is a third-party beneficiary. Accordingly, the court doesn't address the remaining two elements of the third-party beneficiary test.

CFA hasn't pleaded facts to establish a third-party breach of contract claim. The court dismisses Count I without prejudice.[3]

### CFA's Claim for Breach of the Subcontract

Conduent says the court should dismiss CFA's breach of contract claim for the Subcontract because the 15.26 percent participation rate isn't part of the Subcontract and because CFA hasn't alleged any damages related to breach of the Subcontract.

---

[3] This circuit has a liberal policy in favor of permitting plaintiffs to amend their complaints at least once before dismissing a case. See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519 (7th Cir. 2015).

CFA concedes—in both the complaint and its brief—that the Subcontract doesn't explicitly include the 15.26 percent participation rate, but it alleges that the Subcontract incorporates the rate because the Subcontract incorporates portions of the Prime Contract in the Statement of Work and because the Subcontract is subordinate to the Prime Contract.

The Subcontract incorporates and reproduces the language from particular sections of the Prime Contract, but it says nothing about the MBE/WBE section. The Subcontract explicitly provides that if "other Prime Contract requirements apply to [CFA] or this [Statement of Work], the parties . . . agree to negotiate the inclusion of such amended Prime Contract Language through an amendment to this [Statement of Work]." [Doc. No. 1-2 at 113]. CFA seems to conflate the incorporation of some parts of the Prime Contract as the incorporation of the entire Prime Contract. It also seems to suggest that the Subcontract's incorporation of schedules attached as exhibits shows that the parties intended to incorporate unmentioned parts of the Prime Contract.

Following New York law, the court won't read a partial incorporation of certain sections as a blanket incorporation of the entire Prime Contract. *See* VRG Linhas Aereas S/A v. MatlinPatterson Glob. Opportunities Partners II L.P., 605 F. App'x 59, 61 (2d Cir. 2015) ("Where . . . the parties to an agreement choose to cite in the operative contract 'only a specific portion' of another agreement, [courts] apply 'the well-established rule that "a reference by the contracting parties to an extraneous writing for a particular purpose makes it part of their

agreement only for the purpose specified."" (citation omitted)); CooperVision, Inc. v. Intek Integration Techs., Inc., 794 N.Y.S.2d 812, 819 (N.Y. App. Div. 2005) (finding that parties' explicit incorporation of certain provisions showed intent not to incorporate other provisions).

CFA also argues that the Subcontract incorporates the entire Prime Contract because the Subcontract is "subordinate to" the Prime Contract. This argument is unavailing. *See* ACS State & Loc. Sols., Inc. v. Citicorp Elec. Fin. Servs., Inc., 5 A.D.3d 105, 106 (N.Y. App. Div. 2004) (summarily rejecting all of plaintiff's arguments, including that subordination clause showed intent to incorporate prime contract); Brief of Defendant-Respondent at *22-23, ACS State & Loc. Sols., Inc. v. Citicorp Elec. Fin. Servs., Inc., No. 3011, 2003 WL 25568329, at *22-23 (Dec. 10, 2003) (responding to plaintiff's argument about subordination).

The Subcontract doesn't reference the 15.26 percentage or incorporate the MBE/WBE section of the Prime Contract, so Conduent's commitment to that percentage in the Prime Contract doesn't give rise to a breach of contract claim under the Subcontract.

Conduent says the court should dismiss CFA's claim for breach of the Subcontract because CFA hasn't alleged any damages relating to the alleged breach. It argues that CFA's only alleged damages are "anticipatory amounts" arising under the MBE/WBE participation plan rate, rather than money owed for services CFA performed under the Subcontract or damages arising from not

giving it 30 days' notice. [Doc. No. 11 at 18]; *see* [Doc. No. 1-2 at 134 (notice requirement)]. CFA concedes that Conduent has paid for the services CFA has actually performed, but it says Conduent wrongly deprived it of the opportunity to perform the full 15.26 percent allocated to it in the Prime Contract.

To state a claim for breach of contract under New York law, the plaintiff "must allege the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." Khodeir v. Sayyed, 323 F.R.D. 193, 202 (S.D.N.Y. 2017) (citations omitted). "In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint." Id. (quoting Lexington 360 Assocs. v. First Union Nat'l Bank of N.C., 234 A.D.2d 187, 189-190 (N.Y. App. Div. 1996)).

The complaint alleges CFA has suffered monetary damages as a result of the alleged breach of the Subcontract, but CFA only connects its claim to the Prime Contract's MBE/WBE participation plan rate. The court already determined that CFA hasn't sufficiently alleged that it is a third-party beneficiary to the Prime Contract or that the MBE/WBE participation plan is incorporated into the Subcontract. Even making all inferences in favor of CFA, CFA hasn't alleged any damages connected to Conduent's alleged breach of the notice requirement or any other part of the Subcontract.

CFA hasn't pleaded facts to establish a claim for breach of the Subcontract. It may be possible for CFA to articulate damages arising out of the breach of notice provision, *see* Runnion ex rel. Runnion v. Girl Scouts of Greater

Chi. & Nw. Ind., 786 F.3d at 520 (citation omitted), so the court dismisses Count II without prejudice.

### CFA's Claim for Unjust Enrichment

Conduent says the court should dismiss Count III because CFA's reliance on the Prime Contract and Subcontract for its other claims "close[s] the door to any equitable claim." [Doc. No. 16 at 13]. CFA responds that it is merely pleading in the alternative.

Under Federal Rule of Civil Procedure 8(d)(2), "[a] party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." A party may state as many separate claims "as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

But "a party's option to plead inconsistent theories such as breach of contract and unjust enrichment is 'limited.'" Mashallah, Inc. v. W. Bend Mut. Ins. Co., 20 F.4th 311, 325 (7th Cir. 2021). Unjust enrichment is a common law remedy available when there is no contract; an unjust enrichment claim must fail when an express contract governs the parties' conduct. Aaron MacGregor & Assocs., LLC v. Zhejiang Jinfei Kaida Wheels Co., 328 F. Supp. 3d 906, 924-925 (N.D. Ind. 2018) (citations omitted). Plaintiffs may plead unjust enrichment as an alternative to breach of contract to allow for the possibility that "the court

finds that no contract existed or that a contract existed but was unenforceable."
Id. (citation omitted).

CFA asserts that its unjust enrichment claim is only an alternative to its breach of the Prime Contract claim, not the breach of the Subcontract claim. But CFA seems to concede that the Subcontract governs its relationship with Conduent. [Doc. No. 1-2 at 7]; *see* QFS Trans., LLC v. Intermodal Cartage Co., 1:22-cv-2356-TWP-MJD, 2023 WL 3267570, at *2 (S.D. Ind. May 5, 2023) (citations omitted) (permitting parties to plead unjust enrichment when express contracts didn't govern their rights or obligations; favorably citing case holding that "[b]ecause Plaintiff admits in its Complaint that it has a valid contract, Plaintiff cannot recover under an unjust enrichment theory from the party . . . with whom it had a contract"); Zoeller v. E. Chi. Second Century, Inc., 904 N.E.2d 213, 221 (Ind. 2009) ("There was an express contract in this transaction, but it was not one to which [the claimants] were parties. . . . That transaction is thus not a bar to the [claimants'] claim for unjust enrichment . . . ."); Quintanilla v. WW Int'l Inc., 541 F. Supp. 3d 331, 353-354 (S.D.N.Y. 2021) (citations omitted) (same under New York law).

CFA's unjust enrichment claim can't survive because the Subcontract is an express contract that governs CFA's and Conduent's rights and duties. CFA can't avoid this conclusion by saying its unjust enrichment claim is only an alternative to its claim for breach of the Prime Contract; the Subcontract governs its relationship with Conduent.

CFA's unjust enrichment claim also falls short because it incorporates the preceding paragraphs—including those about the Prime Contract and Subcontract—into the unjust enrichment count. "A party may not incorporate by reference allegations of the existence of a contract between the parties in the unjust enrichment count." <u>Gociman v. Loyola Univ. of Chi.</u>, 41 F.4th 873, 887 (7th Cir. 2022) (citation omitted) (plaintiff may plead (1) that there is a contract, and the defendant is liable for breach of it; and (2) that there is no contract, and the defendant is liable for unjustly enriching himself at the plaintiff's expense).

CFA might be able to resolve these issues by amending its complaint, so the court dismisses Count III without prejudice.

*CFA's Request for Fees and Costs*

Conduent asks the court to strike the complaint's request for fees and costs. Because the court will allow CFA to amend its complaint, the court won't strike CFA's request for fees and costs. *See* <u>VitalGo, Inc. v. Kreg Therapeutics, Inc.</u>, 370 F. Supp. 3d 873, 880-881 (N.D. Ill. 2019) ("A court may strike particular allegations if '[t]he Court unequivocally dismissed Plaintiff's claims based on these allegations with prejudice, thereby precluding Plaintiff from raising them again' in an amended complaint." (citation omitted) (alteration in original)); Fed. R. Civ. P. 12(f) (court may strike "redundant, immaterial, impertinent, or scandalous matter").

16

Accordingly, the court dismisses CFA's complaint without prejudice and denies Conduent's request that the court strike CFA's prayer for attorney's fees and costs.

### B. CFA's Motion to Exclude

In its reply brief, Conduent asks the court to take judicial notice of the prime contract at issue in ESG Tech. Servs. v. Advantage Health Sols., Inc., No. 1:09-cv-30-TWP-TAB, 2011 WL 2267550 (S.D. Ind. June 6, 2011), and the Indiana Department of Administration, Division of Supplier Diversity website. CFA opposes the request and moves to exclude those materials. [Doc. No. 19].

The court may only consider the pleadings[4] and judicially noticed facts when deciding a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d); Parungao v. Cmty. Health Sys., Inc., 858 F.3d 452, 457 (7th Cir. 2017) (citations omitted). To consider other evidence, a court must treat the Rule 12(b)(6) motion as a Rule 56 motion for summary judgment and give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

The court can take judicial notice of adjudicative facts that aren't subject to reasonable dispute. Fed. R. Evid. 201. "[C]ourts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice

---

[4] The pleadings include the complaint, the answer, and copies of written instruments attached to the complaint. Fed. R. Civ. P. 7(a), 10(c).

of pertinent facts." <u>Gen. Elec. Cap. Corp. v. Lease Resol. Corp.</u>, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing Fed. R. Evid. 201(b) advisory committee's note).

The <u>ESG</u> decision is sufficiently robust that it is unnecessary to take judicial notice of the prime contract. *See* <u>id.</u> (judicial notice "allow[s] courts to avoid unnecessary proceedings when an undisputed fact in the public record establishes that the plaintiff cannot satisfy the 12(b)(6) standard."); Fed. R. Evid. 403 (court may exclude needlessly cumulative evidence). It is unnecessary to address the parties' other arguments on this topic.

Conduent also asks the court to judicially notice the Division of Supplier Diversity Website. CFA's complaint includes language from specific portions of the Division of Supplier Diversity's MBE/WBE policy, and Conduent seeks to have the court review the state agency's website to establish that the Division of Supplier Diversity "operates independently of the Prime Contract." [Doc. No. 16 at 9]. While the court may take judicial notice of government websites, *e.g.*, <u>Betz v. Greenville Corr. Inst.</u>, No. 14-cv-104-MJR, 2014 WL 812403, at *1 (S.D. Ill. Mar. 3, 2014), the court doesn't see how the website is relevant to the motion to dismiss, Fed. R. Evid. 401, or isn't needlessly cumulative, Fed. R. Evid. 403.

The court won't take judicial notice of the contract or the website, grants the motion to exclude, doesn't consider those materials in deciding the motion to dismiss, and doesn't convert the Rule 12(b)(6) motion into one for summary judgment.

IV.    CONCLUSION

For the foregoing reasons, the court GRANTS the motion to dismiss and DISMISSES CFA's complaint WITHOUT PREJUDICE. [Doc. No. 10]. The court GRANTS CFA 21 days from the date of this order to file an amended complaint. The court GRANTS the motion to exclude. [Doc. No. 19].

SO ORDERED.

ENTERED:  August 18, 2023

/s/ Robert L. Miller, Jr.
Judge, United States District Court

Distribution to all counsel of record via CM/ECF.

19