### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CFA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-01575-TWP-TAB |
| | ) | |
| CONDUENT STATE & LOCAL SOLUTIONS, | ) | |
| INC., Successor by Merger to CONDUENT | ) | |
| HUMAN SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### ENTRY ON PENDING MOTIONS

This matter is before the Court on Defendant Conduent State & Local Solutions, Inc.'s ("Conduent"), Second Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) (Filing No. 40), and Plaintiff CFA, Inc.'s ("CFA") Objection to Magistrate's Discovery Order (Filing No. 50), Motion to Stay Briefing and Briefing Deadlines on Conduent's Second Motion to Dismiss Pending a Ruling on CFA's Objection to Magistrate's Discovery Order (Filing No. 51), Motion for Leave to File Second Amended Complaint (Filing No. 52), Motion for Leave to File Reply Brief (Filing No. 60), and Objection to Magistrate's Briefing/Stay Order (Filing No. 61).

This action relates to a dispute over a Minority Business Enterprise ("MBE") provision in a prime government contract (the "Prime Contract") for staffing services between Conduent and the Indiana Family and Social Services Administration ("FSSA"), and a related subcontract (the "Subcontract") between Conduent and CFA. CFA alleges that Conduent breached both contracts by failing to subcontract a certain amount of work to CFA, and that Conduent was unjustly enriched when it performed that work itself. Conduent moves for dismissal of all claims with prejudice and seeks attorneys' fees. For the following reasons, the Court **grants** Conduent's

Second Motion to Dismiss, albeit without prejudice as to some claims, **denies** Conduent's request for attorneys' fees, **denies in part as moot** CFA's Motion for Leave to File Second Amended Complaint, and **denies as moot** all remaining pending motions.

## I.      <u>BACKGROUND</u>

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences in favor of CFA as the non-moving party. *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

The facts alleged in the Amended Complaint are substantively the same as the facts alleged in the original Complaint, which Senior Judge Robert L. Miller, Jr. ("Judge Miller") concisely summarized in the Court's August 18, 2023 Opinion and Order in this case ("August 2023 Order"):

> The Prime Contract provides that Conduent would provide staffing services to the Indiana Family and Social Services Administration. It says the State awarded the Prime Contract to Conduent in part because of its Minority and/or Women's Business Enterprise ("MBE/WBE") participation plan. It lists CFA as an MBE/WBE subcontractor that would participate in 15.26 percent of services under the Prime Contract. The Prime Contract requires Conduent to submit copies of its agreements with MBE/WBE subcontractors to the State's Department of Administration, Division of Supplier Diversity. The Division of Supplier Diversity must review and approve any requests for changes to the MBE/WBE participation plan. Conduent's "failure to comply with the provisions in [the MBE/WBE] clause may be considered a material breach of the [Prime] Contract."

> The complaint includes excerpts from the Division of Supplier Diversity's MBE/WBE policy statement, which says contractors must use MBE/WBE subcontractors at their committed participation percentages and outlines the procedures for modifying the MBE/WBE participation plan. Those procedures involve the subcontractor signing a notification document and the Division interviewing interested parties, including the subcontractor, to determine whether a change is appropriate.

> Conduent and CFA entered into the Subcontract pursuant to the Prime Contract's directive. The Subcontract says CFA will perform services under the Prime Contract for Conduent, as described in the Statement of Work. The Statement of Work provides that CFA (but not Conduent) must comply with the terms of the Prime Contract, and it incorporates particular parts of the Prime Contract by

reference. The Subcontract doesn't explicitly include the 15.26 percent participation rate listed in the Prime Contract. . . .

The Subcontract provides that "Conduent has the primary responsibility for performance under the Prime Contract" and may perform, obtain from another entity, or otherwise remove any portion of the services being performed by CFA with 30 days' written notice to CFA. Conduent agrees to pay CFA based on CFA's invoices for services rendered and other pre-approved costs, subject to Conduent's approval. The Subcontract says it is the entire agreement between the parties and supersedes any prior agreements that aren't specifically referenced and incorporated into the Subcontract.

CFA provided services as agreed, and, as of April 11, 2022, Conduent has paid CFA $18,642,710.97. CFA alleges that Conduent has received $188,837,021 under the Prime Contract, so CFA is entitled to 15.26 percent (which it calculates as $28,816,529.40). CFA alleges Conduent either performed services that should have been allocated to CFA, contracted the services out to another subcontractor, or a combination of the two, but did so without amending the Prime Contract's MBE/WBE participation plan or giving it 30 days' notice under the Subcontract.

CFA sent Conduent an invoice for the difference between the amount Conduent has paid and the amount it says Conduent owes. Conduent disputes that it owes CFA the money and has refused to pay….

(Filing No. 31 at 2–4 (alterations in original) (footnotes and internal citations omitted).)

In July 2022, CFA initiated this action in state court.  Conduent removed it to federal court in August 2022 and, the next month, filed a motion to dismiss (Filing No. 1; Filing No. 10). On August 18, 2023, Judge Miller dismissed CFA's claims without prejudice and granted leave to file an amended complaint[1] (Filing No. 31).

On September 7, 2023, CFA filed the operative Amended Complaint (Filing No. 35). Conduent promptly filed a Second Motion to Dismiss (Filing No. 40) and a motion to stay discovery pending the Second Motion to Dismiss (Filing No. 42). On November 2, 2023, the Magistrate Judge granted Conduent's motion to stay discovery ("Discovery Stay Order") (Filing

---

[1]The Southern District of Indiana had one of the heaviest weighted caseloads in the country, and Judge Miller graciously accepted a designation by the Seventh Circuit to hear cases in this district.  With his retirement from the bench, on August 29, 2023, this case was reassigned from Judge Miller to Chief Judge Tanya Walton Pratt (Filing No. 33).

No. 49). On November 10, 2023, CFA objected to the Discovery Stay Order (Filing No. 50) and moved to stay briefing on the Second Motion to Dismiss pending the objection to the Discovery Stay Order (Filing No. 51). CFA has also moved for leave to file a reply in support of its objection to the Discovery Stay Order (Filing No. 60).

On November 16, 2023, CFA responded in opposition to Conduent's Second Motion to Dismiss (Filing No. 53)[2] and filed a Motion for Leave to File Second Amended Complaint ("Motion for Leave") (Filing No. 52). Then, on November 29, 2023, Conduent moved to stay briefing on the Motion for Leave pending its Second Motion to Dismiss (Filing No. 56). The Magistrate Judge granted Conduent's motion (Filing No. 57), to which CFA filed an objection (Filing No. 61).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual

---

[2] The filing of CFA's response mooted its motion to stay briefing on the Second Motion to Dismiss (Filing No. 51).

allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support").  The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.  Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

**B.**     **<u>Motion for Leave to Amend</u>**

Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleading once as a matter of course within twenty-one days after serving it, or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b)." After a responsive pleading has been filed and twenty-one days have passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Rule, however, "do[es] not mandate that leave be granted in every case. In particular, a district court may deny a plaintiff leave to amend his complaint if there is undue delay, bad faith[,] or dilatory motive . . . [,] undue prejudice . . . , [or] futility of amendment." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002) (citation and quotation marks omitted). "Whether to grant or deny leave to amend is within the district court's discretion." *Campbell v. Ingersoll Milling Machine Co.*, 893 F.2d 925, 927 (7th Cir. 1990).

### III.    DISCUSSION

To put it mildly, this dispute has been zealously litigated by both sides.  In total, six motions are pending before the Court.  In this Order, the Court will discuss only Conduent's Second Motion to Dismiss and CFA's Motion for Leave to File Second Amended Complaint, which are dispositive of the remaining four motions.  The arguments raised in the briefing on the Second Motion to Dismiss were or could have been raised in briefing on Conduent's first Motion to Dismiss, and many of them were addressed by Judge Miller in the August 2023 Order.  Nevertheless, the Court will offer additional analysis to help the parties streamline future briefing and avoid the unnecessary repetition of unsuccessful arguments.

CFA's Amended Complaint, like its original complaint, asserts three claims: Count I for breach of the Prime Contract, Count II for breach of the Subcontract, and Count III for unjust enrichment.  In its Second Motion to Dismiss, Conduent raises the same arguments it raised in its first Motion to Dismiss: Count I must be dismissed because CFA is not a third-party beneficiary to the Prime Contract; Count II must be dismissed because CFA cannot adequately state a claim for a breach of any provision of the Subcontract; and Count III is barred by the existence of the Prime Contract and Subcontract.  Conduent also reasserts its request that the Court strike CFA's request for attorneys' fees.  Conduent asks that the Court dismiss all of CFA's claims with prejudice and award it fees and costs.  CFA's response, which is, in substance, a motion to reconsider Judge Miller's August 2023 Order, argues that CFA's claims are adequately pled, and even if not, dismissal with prejudice would be improper because no discovery has yet occurred. The Court will address CFA's three claims in turn, and then discuss each party's request for attorneys' fees.

### A.    Count I: Breach of the Prime Contract

CFA's claim for breach of the Prime Contract is based on the Prime Contract's MBE/WBE compliance provision (the "MBE/WBE Provision"), which states that Conduent will commit 15.26

percent of its work under the Prime Contract to CFA (Filing No. 35-1 at 16).  CFA contends that Conduent failed to subcontract at least 15.26 percent of its work to CFA in violation of the MBE/WBE Provision.  CFA is not a party to the Prime Contract but alleges it may enforce the Prime Contract as a third-party beneficiary.  Conduent argues that CFA has failed to sufficiently allege its third-party beneficiary status, and that Count I should be dismissed with prejudice (Filing No. 41 at 11–19). The Court will address whether the Amended Complaint adequately pleads a third-party beneficiary claim before discussing whether dismissal with prejudice is appropriate and whether leave to amend should be granted.

### 1.   Whether CFA Has Sufficiently Alleged Breach of the Prime Contract

To enforce a contract as a third-party beneficiary, the third party must show (1) a clear intent by the contracting parties to benefit the third party; (2) a duty imposed on a contracting party in favor of the third party; and (3) that performance of the contract is necessary to render the intended benefit to the third party. *Luhnow v. Horn*, 760 N.E.2d 621, 628 (Ind. Ct. App. 2001). "[T]he intent to benefit the third party is the controlling factor and may be shown by specifically naming the third party or by other evidence." *Luhnow*, 760 N.E.2d at 628. Intent "'must affirmatively appear from the language of the instrument when properly interpreted and construed,'" though the intent to benefit a third party need not be demonstrated any more clearly than intent regarding any other terms of the contract." *OEC-Diagnostics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996) (quoting *Freigy v. Gargaro Co.*, 60 N.E.2d 288, 291 (Ind. 1945)).  The requisite intent "is not a desire or purpose to confer a particular benefit upon the third-party nor a desire to advance his interest or promote his welfare, but an intent that the promising party or parties shall assume a direct obligation to him." *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 276 (Ind. Ct. App. 2001); *Kirtley v. McClelland*, 562 N.E.2d 27, 37 (Ind. Ct. App. 1990) ("To be enforceable, it must clearly appear that it was the purpose or a purpose of the contract to impose

an obligation on one of the contracting parties in favor of the third party."). "It is not enough that performance of the contract would be of benefit to the third party." *Kirtley*, 562 N.E.2d at 37.

In the August 2023 Order, Judge Miller held that CFA's original complaint failed to adequately allege that the contracting parties (Conduent and the FSSA) intended to directly benefit CFA (Filing No. 31 at 5–10). Specifically, he held that the MBE/WBE Provision, without more, did not adequately establish CFA's third-party beneficiary status. Judge Miller also rejected CFA's attempt to distinguish analogous caselaw and its argument that the Prime Contract incorporated certain State policies that impose duties in favor of CFA. *Id.* at 7–10.

Count I of the Amended Complaint is substantively the same as Count I of the original complaint. The new allegations largely consist of legal arguments that are repeated in CFA's response brief (Filing No. 35 at 6–7). Conduent therefore argues Count I should be dismissed for the same reasons articulated in the August 2023 Order (Filing No. 41 at 11). CFA asserts a variety of arguments in response, which the Court discerns as four primary arguments: (1) the Court misapplied Indiana law in the August 2023 Order and in two cases on which the August 2023 Order relies; (2) the face of the Prime Contract establishes CFA's third-party beneficiary status; (3) the parties' course of conduct demonstrates an intent to benefit CFA; and (4) evidence of circumstances surrounding the execution of the Prime Contract establishes an intent to benefit CFA.

      **a.  <u>Application of Indiana Law</u>**

CFA challenges Judge Miller's conclusion that being named a participant in the Prime Contract's MBE/WBE Provision does not "automatically establish" that the contracting parties intended to benefit CFA (Filing No. 53 at 7–8; Filing No. 31 at 10). In reaching this erroneous conclusion, CFA contends, Judge Miller misapplied well-established Indiana law and improperly relied on two other decisions from this Court—*ESG Technical Services, LLC v. Advantage Health*

*Solutions, Inc.* ("*ESG*") and *Bucher & Christian Consulting, Inc. v. Novitex Enterprise Solutions, Inc.* ("*Bucher*")—that likewise misapplied Indiana law. (Filing No. 53 at 7–8); *ESG*, No. 09-cv-00030, 2011 WL 2267550 (S.D. Ind. June 6, 2011) (Pratt, J.); *Bucher*, No. 15-cv-00010, 2015 WL 5210539 (S.D. Ind. May 22, 2015) (Pratt, J.).  CFA states that this "'not automatically established' rule is made of whole cloth" and "does not accurate [*sic*] reflect Indiana third-party beneficiary law," and that *ESG* and *Bucher* should therefore be reconsidered (Filing No. 53 at 7–8).

CFA argues that under Indiana law, "the intent to benefit the third party . . . may be shown by specifically naming the third party or by other evidence," so being named in the MBE/WBE Provision thus establishes CFA's third-party beneficiary status. *Luhnow*, 760 N.E.2d at 628; *see, e.g.*, *St. Paul Fire & Marine v. Pearson Constr.*, 547 N.E.2d 853, 856 (Ind. Ct. App. 1989).  CFA's position appears to be based on a misunderstanding of the word "may". While Indiana courts have consistently held that naming a third party in a contract *may* show an intent to benefit that third party, no Indiana court has held that it *does* show intent.  Importantly, Indiana courts construe and use "may" as a permissive term, not a mandatory one.  *See Siddall v. City of Michigan City*, 485 N.E.2d 912, 915 (Ind. Ct. App. 1985); *Bochner v. State*, 38 N.E.3d 228 (Table), 2015 WL 4468776, at *2 (Ind. Ct. App. 2015) ("The term 'may' in a statute 'ordinarily implies a permissive condition and a grant of discretion.'"); *see also Journal-Gazette Co. v. Bandido's, Inc.*, 712 N.E.2d 446, 456 (Ind. 1999) ("A defendant's state of mind . . . *may* be shown by indirect or circumstantial evidence. The question of whether there is *sufficient* evidence . . . . is a question of law . . . ." (emphasis added)); *Eifler v. State*, 570 N.E.2d 70, 77 (Ind. Ct. App. 1991) (stating that intent to defraud "*may* be shown by circumstantial evidence," but that evidence "must be *sufficient*" (emphasis added)). This Court's conclusion that naming a third party only "may" show an intent to benefit that third party, and does not "automatically" show intent, is based on the proper application of Indiana law.

CFA raises additional criticisms of the Court's analyses in *ESG* and *Bucher*.  CFA argues that in *ESG*, the Court improperly cited Seventh Circuit decisions that applied Illinois and New Jersey law, and not Indiana law. The *ESG* court's citation to persuasive Seventh Circuit authority was not improper. 2011 WL 2267550, at *6.  And the Court's conclusion in *ESG* was appropriately supported by the well-established principle that under Indiana law courts must determine the contracting parties' intent by viewing "the contract as a whole and 'not from detached provisions thereof,'" like a single reference to a third party.  *ESG*, 2011 WL 227550, at *5–6 (citing *McClain's Estate v. McClain*, 183 N.E.2d 842 (Ind. Ct. App. 1962)).  As for *Bucher*, CFA takes issue with the Court's analysis of *Luhnow v. Horn*, 760 N.E.2d 621 (Ind. Ct. App. 2001).  In *Luhnow*, the plaintiff-landowners, the Luhnows, sued for breach of contract as third-party beneficiaries, but the trial court denied the claim on summary judgment.  The Court of Appeals affirmed the denial, stating that the contract "[did] not show a clear intent to directly benefit landowners, such as the Luhnows" because: "[t]he Luhnows [were] not specifically named in the contract, nor [were] landowners as a class named"; "the contract addresse[d] only the rights and obligations of the two contracting parties"; and the "other evidence" of intent cited by the Luhnows showed, "at best," that the contracting parties' knew the Luhnows "would derive an incidental benefit from the contract."  *Id.* at 629–30.  CFA states: "[c]ritically, the Indiana Court of Appeals did ***not*** hold that such a specific indication of the Luhnows would only be 'evidence of intent' that 'may' establish third-party beneficiary status" (Filing No. 53 at 8 (emphasis in original)). But conversely, the *Luhnow* court did not state that a specific reference to the Luhnows *would have* established their third-party beneficiary status. The *Luhnow* court only explained that any evidence that might have shown an intent to benefit the Luhnows—including, but not limited to, a name reference—was absent from the contract. *Luhnow*, 760 N.E.2d at 629–30.

In sum, under Indiana law, a specific reference to a third party is only evidence of intent to benefit that third party; it is not necessarily sufficient evidence. Stated differently, a reference to a third party does not "automatically establish" third-party beneficiary status. *See Ind. Gaming Co., L.P., v. Blevins*, 724 N.E.2d 274, 278 (Ind. Ct. App. 2000) (holding that technicians were not third-party beneficiaries to contract, despite provision requiring that technicians be paid union wages for work); *see also Xirum v. U.S. Immigr. & Customs Enf't*, No. 22-cv-00801, 2023 WL 2683112, at *16–21 (S.D. Ind. Mar. 29, 2023) (applying Indiana law, finding detainees were not third-party beneficiaries to detention contract, despite being the subject of the contract). The Court correctly applied Indiana law in *ESG*, *Bucher*, and its August 2023 Order.

CFA further argues that even if not erroneous, *ESG* and *Bucher* are distinguishable in two ways. First, in those cases, the contractors and third-party MBE/WBEs never executed subcontracts (Filing No. 53 at 20–24). CFA contends that if the subcontractors in *ESG* and *Bucher* had executed subcontracts, like CFA did, then those subcontractors would have been third-party beneficiaries to the prime contracts. Judge Miller called this reading of *ESG* and *Bucher* "too great a stretch" (Filing No. 31 at 8), and it is. In *ESG*, the Court stated that "ESG and Advantage [the contractor] had to reach a legally binding agreement before ESG had any enforceable rights." *ESG*, 2011 WL 2267550, at *7. CFA reads this statement to mean that ESG and Advantage needed to execute a subcontract for ESG to have enforceable rights against Advantage *under the prime contract*, but that is not what the Court held. The Court held that ESG and Advantage needed to execute a subcontract for ESG to have any enforceable rights *whatsoever* against Advantage. The *ESG* court explained that the prime contract "indicate[d] further steps were necessary before a subcontractor gained *any rights* against Advantage. *Any contractual rights of the subcontractors would derive from being a party to the subcontract and not from being a third-party beneficiary to*

*the State contract.*" *Id.* at *7 (emphasis added).[3] In *Bucher*, the Court similarly held that the prime

contract's "requirement of a separate, later-executed subcontract . . . supports the proposition that

the [prime contract] itself was not specifically intended to confer a benefit on [the subcontractor]."

*Bucher*, 2015 WL 5210668, at *12. So while the lack of subcontracts in *ESG* and *Bucher* factually

distinguishes those cases from this one, it does not support CFA's third-party beneficiary claim.

To the contrary, the fact that Conduent and CFA executed a Subcontract only confirms that

Conduent and the FSSA intended for the Subcontract, and not the Prime Contract, to govern CFA

and Conduent's relationship.

Second, CFA argues *ESG* and *Bucher* are distinguishable because in those cases, the prime

contracts did not impose any obligations on the contractor in favor of the subcontractors.  But here,

CFA contends, the Prime Contract incorporates Indiana Department of Administration ("IDOA")

policies that impose obligations in CFA's favor, which shows that the parties intended to benefit

CFA.[4]  In the August 2023 Order, Judge Miller rejected this argument, finding that: (1) the Prime

Contract did not incorporate IDOA policies; and (2) even if it did, the IDOA policies only

established duties in favor of the State, not CFA ([Filing No. 31 at 9](#)).  CFA challenges both

conclusions.

CFA argues that Judge Miller erred in concluding "that Conduent had not incorporated the

IDOA/DSD compliance rules and regulations into the Prime Contract," but CFA fails to show how

Judge Miller's finding was erroneous ([Filing No. 53 at 18](#)).  Instead, CFA simply recites the same

---

[3] CFA contends that this statement is "mere dicta" ([Filing No. 53 at 24](#)), but it is not. This statement sets forth the Court's reason for dismissing the plaintiff's third-party beneficiary claim.  *ESG*, 2011 WL 2267550, at *10.

[4] This argument conflates the first element of a third-party beneficiary claim—a clear intent to benefit a third party—with the second element—a duty imposed on one of the contracting parties in favor of the third party. The alleged duty imposed on Conduent in favor of CFA is the duty to assign 15.26 percent of its work to MBE/WBE ([Filing No. 53 at 17](#)), so the Court addresses this argument in context of the first element of CFA's third-party beneficiary claim.

contractual language that Judge Miller found unpersuasive. *Id.*  CFA cites no caselaw, offers no analysis, and gives the Court no reason to reconsider or depart from Judge Miller's analysis. For the same reasons explained in the August 2023 Order, the Court concludes that the Prime Contract did not incorporate IDOA policies (Filing No. 31 at 9–10).

Next, CFA argues that Judge Miller erred in concluding that even if an IDOA policy had been incorporated into the Prime Contract, the "policy was not imposed in favor of the third party" (Filing No. 31 at 9; Filing No. 53 at 18).  CFA cites one new piece of evidence to show that IDOA policies create duties to specific third parties—a DSD Change in Participation Notification form (the "Change Form") (Filing No. 53 at 19, n. 17).[5] CFA contends that the Change Form "*confirms that Conduent's MBE commitment*, as provided in the Prime Contract, *flows* not simply to the State of Indiana, but also *to CFA in particular*" (Filing No. 53 at 19 (emphasis in original)).  But the Change Form is merely a blank form.  It is not an IDOA policy, it does not cite any IDOA policy, it is not incorporated into any IDOA policy, and it does not refer to any particular MBE or WBE.  To the contrary, the Change Form's generic reference to "your firm" could apply to any MBE or WBE.  The Change Form does not show that the IDOA policies create any rights in favor of CFA, or any particular MBE or WBE.

There was no error in the Court's application of Indiana law in *Bucher*, *ESG*, or the August 2023 Order.  The Court finds no reason to depart from the analyses in those decisions and declines CFA's invitation to reconsider them (Filing No. 53 at 8).

---

[5] The Change Form was not attached to the pleadings or CFA's response brief (Filing No. 53 at 19).  A footnote in CFA's brief contains a URL that directs the Court to the form. But even if the Change Form were properly offered as an exhibit and admissible, it would not show that IDOA's policies create any duties in favor of any specific entity, much less CFA.

**b.  Face of Prime Contract as Evidence of Intent**

CFA next argues that the contracting parties' intent to benefit CFA is evidenced by the MBE/WBE Provision (Filing No. 53 at 9).  For the reasons explained in the Court's August 2023 Order, under Indiana law, the MBE/WBE Provision, without more, does not demonstrate a clear intent to directly benefit CFA. CFA contends that the Court only reached this conclusion by inappropriately applying a more stringent standard for showing intent than what is required under Indiana law.  *Id.*  But CFA fails to show where the Court allegedly applied an incorrect standard, and CFA's disagreement with the Court's application of the correct standard does not save its claim from dismissal.

**c.  Course of Conduct as Evidence of Intent**

CFA further argues that the parties' course of conduct demonstrates Conduent's intent to bestow third-party beneficiary rights on CFA. Specifically, Conduent's intent is shown by the fact that "Conduent and CFA entered a subcontract [*sic*] to provide MBE subcontractor services" as "contemplated by the Prime Contract" (Filing No. 53 at 16). This "course of conduct" does not support CFA's position. To the contrary, it shows the parties' intent to have Conduent and CFA's relationship governed by a separate subcontract.

CFA also contends that "[t]he intent to create a third-party benefit, under the Prime Contract is also evidenced by the contracting parties' course of performance with other MWBE/IVOSB subcontractors also named in the Prime Contract," namely MBC Group, Inc. ("MBC").  *Id.* CFA fails to cite any authority supporting its position that Conduent's course of conduct with MBC, evidences the intent of Conduent and the FSSA with respect to CFA. Regardless, this Court has already held that Conduent's alleged "course of conduct" with MBC does not evidence an intent to benefit MBC, so it surely does not evidence an intent to benefit CFA. *MBC Group, Inc. v. Conduent State & Local Solutions, Inc.*, No. 22-cv-1869, 2024 WL 757983, at *7 (S.D. Ind. Feb. 23, 2024).

14

### d.  **Circumstances Surrounding Execution of Prime Contract**

CFA lastly argues that certain extrinsic evidence of circumstances surrounding the execution of the Prime Contract shows the contracting parties' intent to benefit CFA.  CFA first cites a section of the Indiana Administrative Code and statements on the website for the IDOA Division of Supplier Diversity (Filing No. 53 at 13). None of this evidence was attached to CFA's Amended Complaint, but even if the Court could consider it, it would not save CFA's third-party beneficiary claim from dismissal.

The State of Indiana's institution of and commitment to an MBE/WBE program does not demonstrate that the State intended for it or its contractors to assume direct obligations to MBE/WBEs, and it certainly does not demonstrate an intent to directly benefit CFA in particular. This evidence, at most, shows that the State has a desire to promote the welfare and success of MBE/WBEs by increasing (though not guaranteeing) their participation in government contracts. *Centennial Mortg., Inc.*, 745 N.E.2d at 276.  As the Court explained in *ESG*,

> …there is no doubt the State has a noble goal of encouraging equal opportunity for MBEs and WBEs to participate in the State's award of contracts. While the State might intend to benefit or advance the interests of MBEs and WBEs as a whole, the MBE/WBE program does not automatically establish [CFA] as a third-party beneficiary. Therefore, for [CFA] to show that the parties intended to benefit it as a third-party beneficiary, [CFA] must present evidence that the parties specifically intended to benefit [CFA] and not simply an intent to benefit MBEs and WBEs generally.

*ESG*, 2011 WL 2267550, at *5 (internal citations omitted).

CFA also cites certain procurement documents (the "Procurement Documents") as evidence of the State's intent to directly benefit CFA. These documents, which CFA admits may not even be complete, were not attached to the Amended Complaint.  Nevertheless, even if the Court could consider these documents, they do not support CFA's claim.  The Procurement Documents contain the same type of aspirational, non-specific language as the MBE/WBE Provision, including

statements that: the State has a "reasonable expectation" of MBE/WBE "subcontracting opportunities"; Conduent "agrees to be bound by the regulatory process" governing the MBE/WBE program; Conduent believes that "[p]artnering with [MBE/WBEs] first is a win-win for all parties"; Conduent "is dedicated to including historically underutilized businesses" in its contracts; and the Prime Contract was awarded to Conduent, in part, because of its commitment to subcontracting a certain portion of work to MBE/WBEs. (Filing No. 53 at 15 (emphasis omitted).) As Judge Miller explained in the August 2023 Order, this language of the Prime Contract does not show an intent to benefit CFA (Filing No. 31 at 6–9). This language, like the MBE/WBE Provision, does not even guarantee that CFA would receive any subcontracted work from Conduent. The language merely shows that Conduent aspires to promote the welfare of MBE/WBEs generally.

CFA insists that evidence of other circumstances surrounding the execution of the Prime Contract would show that it is an intended third-party beneficiary, but no such circumstances are alleged in the Amended Complaint. As such, the Court is not persuaded to deviate from Judge Miller's analysis in the August 2023 Order. Count I must be **dismissed**.

### 2. **Whether Dismissal with Prejudice is Appropriate**

Conduent argues that CFA has not and cannot adequately allege a third-party beneficiary claim, so dismissal with prejudice is appropriate. CFA responds that dismissal with prejudice would be improper because it has not yet conducted discovery, which CFA believes would yield extrinsic evidence related to the contracting parties' intent (Filing No. 53 at 33). However, contemporaneously with its response brief, CFA filed a proposed Second Amended Complaint (Filing No. 52-1). As Conduent notes in its reply brief, CFA's filing of a Second Amended Complaint contradicts its position that it needs to conduct discovery before it can adequately plead a third-party beneficiary claim (Filing No. 59 at 18). CFA could have waited until the Court ruled on its objection to the Discovery Stay Order, and, because no Case Management Order has been

entered, CFA was not subject to a deadline to move to amend its pleading. Yet CFA chose to file a proposed Second Amended Complaint anyway. CFA must believe that its Second Amended Complaint adequately pleads a third-party beneficiary claim, despite the stay of discovery, or else CFA would not have filed it. Fed. R. Civ. P. 11(b)(2). The Court therefore concludes that the lack of discovery does not preclude dismissal with prejudice.

Nevertheless, the Court declines to dismiss Count I with prejudice because CFA purports to cite new extrinsic evidence of circumstances surrounding the execution of the Prime Contract. As the Seventh Circuit has explained:

> In determining the intention of the parties to a contract, Indiana courts—in addition to ascertaining the plain meaning of the contract terms—have a "duty to consider … the surrounding circumstances which existed at the time the contract was made," including "the nature of the agreement, together with all the facts and circumstances leading up to the execution of the contract, the relation of the parties, the nature and situation of the subject matter, and the apparent purpose of making the contract."

*Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 381 (7th Cir. 2010) (quoting *Ruff v. Charter Behav. Health Sys. of Nw. Ind., Inc.*, 699 N.E.2d 1171, 1176 (Ind. Ct. App. 1998)); *see Closson v. Billman*, 69 N.E. 449, 450 (Ind. 1904) ("In the construction of . . . every other contract, the true question is: What was the intention of the parties, as disclosed by the instrument read in the light of the surrounding circumstances?"); *see also Brian v. Reg'l Innovation & Startup Educ.*, 225 N.E.3d 173 (Table), 2023 WL 8178663, at *4 (Ind. Ct. App. Nov. 27, 2023) ("When there is conflicting evidence regarding the intended function of a writing, it is a fact-finder's role to weigh the conflicting evidence and 'determine the true intent' of the writing." (citing *Wecker v. Kilmer*, 294 N.E.2d 132, 203 (Ind. 1973) (noting that at times "parol evidence should be permitted to determine the intent of the parties"))); *Randy Faulkner & Assocs., Inc. v. Restoration Church, Inc.*, 60 N.E.3d 274, 280 (Ind. Ct. App. 2016) ("We must give effect to the intentions of the parties, which are ascertained from the language of the contract in light of the surrounding circumstances." (citing

*HK New Plan Marwood Sunshine Cheyenne, LLC v. Onofrey Food Servs., Inc.*, 846 N.E.2d 318, 322 (Ind. Ct. App. 2006))); *Centennial Mortg., Inc.*, 745 N.E.2d at 276 (considering extrinsic evidence of circumstances surrounding formation of building renovation contract); *Gordon v. Finch*, No. 21-CV-292, 2023 WL 3160297, at *4 (N.D. Ind. Apr. 28, 2023) (considering extrinsic evidence of reason for including certain provisions in contract); *Best Flooring, Inc. v. BMO Harris Bank, N.A.*, No. 12-cv-5, 2013 WL 164237, at *4 (S.D. Ind. Jan. 15, 2013) (denying motion to dismiss third-party beneficiary claim on motion to dismiss because a letter "and several other facts" raised claim "beyond the speculative level").

In its Motion for Leave, CFA cites new extrinsic evidence regarding the State and Conduent's intent, which could raise CFA's third-party beneficiary claim beyond the speculative level. Count I is therefore **dismissed without prejudice**.

### 3.   <u>Whether Leave to Amend Should Be Granted</u>

CFA asserts that it recently obtained an affidavit from former Conduent employee Therome Buford (the "Buford Affidavit"), the Procurement Documents, and other IDOA documents concerning the State's MBE/WBE participation program ([Filing No. 52 at 2](#)–3). In its Motion for Leave, CFA acknowledges that this Court has "ruled that CFA being named in the Prime Contract alone does not establish the requisite contractual intent to benefit a third-party," but argues that the Buford Affidavit and IDOA documents demonstrate such an intent. *Id.* at 3–4.

The Court has already explained that the Prime Contract in this case, without more, is insufficient to establish CFA's third-party beneficiary status. The Court also has explained that the IDOA policies and Procurement Documents do not show the State's intent to benefit CFA in particular. However, the Second Amended Complaint contains new allegations supporting CFA's claim based on the Buford Affidavit. The Buford Affidavit describes the procurement process by which Conduent obtained the Prime Contract, the reasons why Conduent made certain affirmations

during the procurement process, and the reason CFA was named in the Prime Contract. According to Buford, the State's Request for Proposal ("RFP") for the Prime Contract provided that "extra points were to be given based upon a company's commitment to the utilization of WMBE and IVOSB subcontractors on the assignment" and "[o]nly one company would be awarded these extra points" ([Filing No. 52-1 at 199](#)). Buford further states that as part of the procurement process for the Prime Contract, Conduent "was required to affirm that it would abide by and be obligated to perform all terms and requirements listed and outlined in the RFP—including, but not limited to, its commitment to utilize the specific MBWE/IVOSB subcontractors listed at the stated participation rates." *Id.* at 200. The affirmation serves to "prevent[] a prime contractor from avoiding its WMBE/IVOSB commitment after it has been awarded a professional services contract—which has historically been a problem in Indiana." *Id.* at 199. The affirmation also "prevents a contractor from proposing to use a WMBE/IVOSB subcontractor at an overly inflated rate (such as 75%) for no other reason than to simply be awarded the contract." *Id.* Buford also asserts that "[i]n or about 2018, IDOA began requiring the WMBE/IVOSB subcontractors and participation rates to be specifically listed on the face of the Prime Contract itself" to "assure[] that Conduent would abide by the subcontractor commitment it had made in obtaining the award of the [Prime Contract]." *Id.* at 200.

This evidence distinguishes this case from *ESG* and *Bucher*, which were decided on summary judgment and were based on the language of the prime contracts alone. In light of the surrounding circumstances alleged in the Buford Affidavit, it is plausible that the State and Conduent intended for the MBE/WBE Provision to bestow third-party beneficiary rights on CFA and allow CFA to enforce the Prime Contract itself.

The Court is not presently deciding whether CFA is a third-party beneficiary to the Prime Contract, and it remains to be seen whether Count I will survive to trial. But the new allegations in the Second Amended Complaint are enough to raise CFA's third-party beneficiary claim beyond the speculative level, which is all that is required at the pleadings stage. *See Best Flooring, Inc. v. BMO Harris Bank, N.A.*, No. 12-cv-5, 2013 WL 164237, at *4 (S.D. Ind. Jan. 15, 2013). The Court therefore **grants** CFA's Motion for Leave to File Second Amended Complaint as to Count I.[6]

**B.**   <u>**Count II: Breach of the Subcontract**</u>

In Count II, CFA alleges that Conduent breached the Subcontract by failing to commit a certain amount of work to CFA and by failing to timely notify CFA that Conduent would be performing some work itself. Conduent argues that CFA's claim fails because the Subcontract does not govern the amount of services Conduent must assign to CFA, and CFA's alleged damages for breach of the Subcontract's notice requirements are barred by the Subcontract (Filing No. 41 at 21–27). The Court will discuss whether CFA has adequately stated a claim for breach of the Subcontract before addressing Conduent's request for dismissal with prejudice and CFA's request for leave to amend.

**1.**   <u>**Whether CFA Has Sufficiently Alleged Breach of the Subcontract**</u>

Count II alleges that Conduent breached two obligations under the Subcontract: its obligation to commit a certain amount of work to CFA; and its obligation to notify CFA of changes to the MBE/WBE participation plan. The Court will address each argument in turn.

---

[6] Although CFA's Motion for Leave is not yet ripe, the Court finds that leave to amend should be granted based on the Court's review of the proposed Second Amended Complaint and the liberal standard for granting leave to amend. "Unless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Runnion v. Girl Scouts of Grater Chicago & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (emphasis in original). "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

### a.   **Breach of Obligation to Allocate Work**

In the original complaint, CFA alleged that the MBE/WBE Provision was incorporated into the Subcontract "by implication or reference," and that Conduent breached the Subcontract by failing to allocate 15.26 percent of its work to CFA (Filing No. 1-2 at 7). Judge Miller concluded that as a matter of law, the Subcontract did not incorporate the MBE/WBE Provision, so CFA could not succeed on its breach of Subcontract claim (Filing No. 31 at 11–14). CFA now concedes that the Subcontract does not incorporate the MBE/WBE Provision but still alleges that the Subcontract obligates Conduent to commit a certain amount of work to CFA.  Only CFA's legal theory has changed (Filing No. 53 at 25–26).[7]

CFA contends that the Prime Contract and Subcontract must be construed together under New York law, and, when construed together, a "latent ambiguity" arises "as to what services were committed to CFA under the Subcontract." *Id.* at 26–27.  CFA states that "Conduent's assertion that it has no contractual duties to provide CFA with any work at all, under the Subcontract, as interpreted by Judge Miller, cannot be squared with its express commitment of '15.26% of the ***total contract value*** to CFA' as provided in the Procurement Documents." *Id.* at 27 (emphasis in original).  CFA's new argument does not save Count II from dismissal.

CFA's argument that the Prime Contract and Subcontract should be construed together is, in substance, an argument that the Subcontract incorporates the Prime Contract's provisions, which Judge Miller previously rejected (Filing No. 31 at 11–12). Regardless, CFA's present argument about construing instruments together is unavailing.  Under New York law, courts will construe

---

[7] To the extent CFA's response brief purports to argue that the Subcontract incorporates the MBE/WBE Provision, that argument is undeveloped and therefore deemed waived. *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

related instruments together only "[i]n the absence of anything to indicate a contrary intention." *BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, 112 A.D.2d 850, 852 (N.Y. App. 1985) (citing *Nau v. Vulcan Rail & Constr. Co.*, 36 N.E.2d 106 (N.Y. 1941)).  As Judge Miller noted, the Subcontract and Prime Contract's integration clauses indicate that the parties intended for the instruments to be construed separately (Filing No. 31 at 11–12).  The fact that the Prime Contract and Subcontract were executed by different parties more than a year apart further militates against reading these instruments together.  *See In re Gulf Oil/Cities Service Tender Offer Litigation*, 725 F. Supp. 712, 731–32 (S.D.N.Y. 1989) (declining to read a Merger Agreement and Offer to Purchase together because both documents contained integration clauses and Merger Agreement was not physically attached to the Offer to Purchase); *see Murat v. S. Bend Lodge No. 235 of the Benev. & Protective Order of Elks of the U.S.*, 893 N.E.2d 753, 757 (Ind. Ct. App. 2008) ("[T]he [contemporaneous document doctrine] should be applied cautiously when the documents involve different parties.").

Further, the terms of the Prime Contract do not give rise to any latent ambiguity in the Subcontract.  Under New York law, a "latent ambiguity" arises when a contract provision could apply to different facts, objects, or circumstances.  *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 395 (2d Cir. 2023).  For example, "[i]f a person contracts for value to bequeath 'my house to my daughter,'" the contract would appear unambiguous on its face.  *Id.*  "Nonetheless, if application of the terms of the contract to the facts reveals that the person making the commitment had two houses (or two daughters) and nothing in the terms of the contract clarifies which house (or daughter) was intended," then the contract would present a latent ambiguity.  *Id.*

There is no similar ambiguity in the Subcontract.  The Subcontract provides that CFA will perform services for Conduent and that Conduent will compensate CFA for those services (Filing No. 35-2 at 2).  CFA identifies no ambiguity as to the type of work it was required to perform for

22

Conduent or the terms of payment. The parties' disagreement relates solely to the amount of services Conduent must assign to CFA under the Prime Contract.  The Subcontract is silent on that topic, so the Subcontract contains no possible ambiguity as to that topic.  CFA has failed to adequately allege a claim for breach of the Subcontract based on an alleged obligation to commit a certain amount of work to CFA.

### b.  Breach of the Subcontract's Notice Provision

The Subcontract contains a provision that permits Conduent to perform or outsource staffing services, but only upon thirty days' notice to CFA (the "Notice Provision") (Filing No. 35-2 at 43).  In the August 2023 Order, Judge Miller found that CFA had failed to adequately allege damages arising from a breach of the Notice Provision, though "[i]t might be possible" for CFA to do so (Filing No. 31 at 13).  The Amended Complaint expands on CFA's damages allegations, alleging that "CFA was deprived of the opportunity to perform . . . staffing services committed to it by Conduent under the Subcontract/Statement of Work. CFA, in turn, has suffered monetary damages in an amount to be proven at trial."  (Filing No. 35 at 9–10.)

CFA contends that the Amended Complaint alleges "[a]t a minimum, CFA has sustained lost profits" (Filing No. 53 at 29).  However, Conduent argues that the Subcontract precludes CFA from recovering lost profits.  The Subcontract states, in relevant part:

> **21. LIMITATION OF LIABILITY** Except for liability provided under Sections 8 . . . Section 19 . . . and Section 20 of this Subcontract . . . , **NEITHER PARTY SHALL BE LIABLE, UNDER ANY CIRCUMSTANCES FOR ANY ANTICIPATORY OR LOST PROFIT, LOST REVENUE, SPECIAL, CONSEQUENTIAL, PUNITIVE, EXEMPLARY, INCIDENTAL, OR INDIRECT DAMAGES OF ANY KIND** . . . **RESULTING FROM THE PERFORMANCE OR NON-PERFORMANCE OF ITS OBLIGATIONS UNDER THIS SUBCONTRACT EVEN IF THOSE NON-DIRECT DAMAGES ARE ATTRIBUTED TO BREACH OF THIS SUBCONTRACT** . . . .

(Filing No. 35-2 at 6–7 (emphasis in original)).

The enforceability of a liability limitation provision, like the above provision, is an affirmative defense. However, the Court may consider this affirmative defense at the motion to dismiss stage. *See Electron Trading, LLC v. Morgan Stanley & Co. LLC*, 157 A.D.3d 579, 580 (N.Y. App. Div. 2018) (considering liability limitation affirmative defense on motion to dismiss). Under New York law, contractual liability limitations are generally enforceable. "The [New York] Court of Appeals has recognized that '[a] limitation on liability provision . . . represents the parties' Agreement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor.'" *Electron Trading, LLC*, 157 A.D.3d at 580 (quoting *Met. Life Ins. Co. v. Noble Lowndes Int'l*, 643 N.E.2d 504 (N.Y. 1994)). The contracting parties "'may later regret their assumption of the risks of non-performance in this manner, but the courts let them lie on the bed they made.'" *Noble Lowndes Int's*, 643 N.E.2d at 507 (quoting 5 Corbin, Contracts § 1068, at 386).

CFA argues that the limitation on liability provision is unenforceable because Conduent "committed the first material breach of the contract" and "has unclean hands" (Filing No. 53 at 30). However, the affirmative defenses cited by CFA are not the appropriate standard for determining whether a limitation on liability provision is enforceable. Under New York law, liability-limiting provisions are unenforceable only when,

> in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.

*Kalish-Jarco, Inc. v. City of New York*, 448 N.E.2d 413, 416–17 (N.Y. 1983). "The type of intentional wrongdoing that could render a limitation [provision] unenforceable is that which is unrelated to any legitimate economic self-interest. Stated otherwise, a party can intentionally breach a contract to advance a legitimate economic self-interest and still rely on the contractual

limitation provision." *Electron Trading, LLC*, 157 A.D.3d at 581 (internal citations and quotation marks omitted).

While the Amended Complaint may allege an intentional breach of the Notice Provision, it does not allege the type of egregious, "sinister" wrongdoing necessary to invalidate the liability limitation provision. At best, CFA alleges that Conduent intentionally breached the Subcontract to retain a larger portion of funds under the Prime Contract, which would be in Conduent's economic self-interest. Because CFA's Amended Complaint fails to allege a viable claim for breach of the Subcontract, Count II must be **dismissed**.

### 2. **Whether Dismissal with Prejudice is Appropriate**

When a complaint fails to state a claim for relief, a plaintiff is ordinarily given a chance to amend the complaint to correct the problem. *See Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). However, leave to amend need not be granted if amendment would be futile. *Garcia v. City of Chi.*, 24 F.3d 966, 970 (7th Cir. 1994). Once a plaintiff has had one or more opportunities to cure the defects but fails, the court may dismiss claims with prejudice. *See Dittman v. ACS Hum. Servs. LLC*, No. 16-cv-16, 2017 WL 819685, at *5 (N.D. Ind. Mar. 1, 2017) (dismissing plaintiff's third amended complaint with prejudice when plaintiff failed to allege sufficient factual matter and it appeared he would never be able to do so); *see also Norman v. N.W. Ind. CA Section 8*, No. 21-CV-158, 2021 WL 4363012, at *5 (N.D. Ind. Sept. 24, 2021) (dismissing second amended complaint with prejudice when the plaintiff had been given opportunities to amend her complaint).

Here, CFA has had ample opportunity to plead a viable claim for breach of the Subcontract but has been unable to do so. CFA has failed to show that the Subcontract incorporates the MBE/WBE Provision or otherwise obligates Conduent to commit a certain amount of work to

CFA, and CFA fails to allege that it has suffered any recoverable damages because of Conduent's breach of the Subcontract's Notice Provision.

CFA's proposed Second Amended Complaint shows that CFA would not be able to successfully plead a claim for breach of the Subcontract even if given another opportunity to amend. Count II of the proposed Second Amended Complaint repeats, almost verbatim, the latent ambiguity arguments raised in CFA's response brief and alleges that Conduent's breach of the Notice Provision caused CFA to suffer lost profits, which are not recoverable ([Filing No. 52-1 at 20](#)–23). CFA has been, and will be unable to, plead a viable claim for breach of the Subcontract. Accordingly, Count II is **dismissed with prejudice**.

### 3.  Whether Leave to Amend Should Be Granted

Because Count II is dismissed with prejudice, CFA's Motion for Leave is **denied as moot** as to Count II.

## C.    Count III: Unjust Enrichment

In Count III, CFA alleges Conduent was unjustly enriched by its performance of services that should have been subcontracted to CFA ([Filing No. 35 at 9](#)). Conduent argues this claim should be dismissed with prejudice because the existence of the Prime Contract and Subcontract bar any equitable recovery ([Filing No. 41 at 28](#)–29). As with CFA's first two claims, the Court will discuss the adequacy of the claim, then Conduent's request for dismissal with prejudice, and then CFA's request for leave to amend.

### 1.  Whether CFA Has Sufficiently Alleged Unjust Enrichment

In the Amended Complaint, CFA clarifies that Count III is alleged in the alternative to Count I only (*Compare* [Filing No. 1-3 at 8](#) *with* [Filing No. 35 at 9](#)). Count III in the Amended Complaint is otherwise identical to Count III in the original complaint. Conduent simply repeats the same arguments raised in its first Motion to Dismiss—the existence of express contracts (the

Prime Contract and Subcontract) bars CFA's unjust enrichment claim (Filing No. 41 at 28). In response, CFA argues that Count III is properly alleged in the alternative to Count I and that its "unjust enrichment claim arises out of the 15.26% MBE provision in the Prime Contract only" and "does not arise out of the Subcontract" (Filing No. 53 at 31). The Court will discuss whether the existence of either contract precludes CFA's claim for unjust enrichment.

### a.   **Whether Prime Contract Bars Unjust Enrichment**

Conduent argues that CFA cannot seek equitable relief based on the MBE/WBE Provision because Conduent admits that the Prime Contract exists, but CFA argues it may seek equitable relief because the parties dispute whether CFA may enforce the Prime Contract. The pertinent question, then, is whether a plaintiff may seek equitable relief based on an express contract to which the plaintiff is not a party. Based on caselaw from the Indiana Supreme Court, the answer is "yes."

In *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213 (Ind. 2009), the City of East Chicago (the "City") and Showboat Marina Partnership ("Showboat") entered into a development agreement for the operation of a riverboat casino. The agreement provided that if Showboat received a gaming license from the Indiana Gaming Commission ("IGC") and began operating the casino, Showboat would contribute a portion of its revenue to organizations for the benefit of the City. Showboat promised, in part, to donate one percent of its adjusted gross receipts to East Chicago Second Century, Inc. ("Second Century"), and Second Century promised to undertake local development activities. The IGC issued a gaming license to Showboat, based in part on Showboat's and Second City's promises. *Id.* Over the next several years, Second Century received approximately sixteen million dollars from Showboat. However, an investigation by the Indiana Attorney General revealed that much of those funds "could not be accounted for and could be traced to Second Century's principals." *Id.* Second Century filed a declaratory judgment action,

seeking to ensure that the revenue payments would continue.  The Attorney General intervened and alleged unjust enrichment.  The Attorney General argued that "the State conferred a measurable benefit on Second Century by 'mandating the payments in the first place as a condition precedent to the [IGC's] authorization of the gaming license,'" and that it would be unjust "to allow Second Century to retain the benefit of [the] funds without fulfilling its obligation to engage in the economic development" of the City.  *Id*.

Second Century moved to dismiss the unjust enrichment claim as barred by the existence of the development agreement.  *Id.* at 220.  The trial court dismissed the unjust enrichment claim, but the Indiana Supreme Court held that the dismissal was erroneous.  The Indiana Supreme Court explained that "[t]here was an express contract in this transaction, but it was not one to which the Attorney General or the State were parties. . . . That transaction is thus not a bar to the Attorney General's claim for unjust enrichment, an equitable remedy."  *Id.* at 221.  The *Zoeller* court further explained that the terms of the development agreement "were intended to control the rights and duties of [Second Century] and the casino licensee in relation to each other; they were not intended to control the rights of any non-parties."  *Id.*

Under *Zoeller*, as long as the parties dispute whether CFA may enforce the Prime Contract, the Prime Contract's existence does not bar CFA's alternative unjust enrichment claim.

### b.  Whether Subcontract Bars Unjust Enrichment

Conduent also argues that CFA has no equitable right to enforce the MBE/WBE Provision "because CFA's agreement with Conduent is governed solely by the Subcontract, which does not include the term CFA wishes to enforce" (Filing No. 59 at 17).  CFA responds that the Subcontract does not preclude equitable recovery because the unjust enrichment claim arises out of a provision in the Prime Contract, not the Subcontract (Filing No. 53 at 31).

Under Indiana law, "[t]he existence of express terms in a valid contract precludes the substitution of and the implication in law of terms *regarding the subject matter covered by the express terms of the contract.*"  *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992) (emphasis added).  "[T]he existence of an express contract will not prevent a party from presenting to a jury a breach of contract theory and a quantum meruit theory if 'the express contract arguably cover[s] a different subject matter than that upon which [the plaintiff] sought a remedy in quasi-contract.'"  *Luse Thermal Techs., LLC v. Graycor Indus. Constructors, Inc.*, 221 N.E.3d 701, 719 (Ind. Ct. App. 2023) (quoting *City of Indianapolis v. Twin Lakes Enters., Inc.*, 568 N.E.2d 1073, 1079 (Ind. Ct. App. 1991)); *see Twin Lakes Enters., Inc.*, 568 N.E.2d 1073 (holding that trial court did not err in instructing jury on breach of contract and unjust enrichment claims because jury could have reasonably found that the parties' contract "arguably covered a different subject matter than that upon which [the plaintiff] sought a remedy in quasi-contract").

So if the Subcontract covers a different subject matter than the MBE/WBE Provision, which forms the basis of CFA's unjust enrichment claim, then the existence of the Subcontract would not bar the unjust enrichment claim.  However, the Amended Complaint alleges that the Subcontract and MBE/WBE Provision both cover the same subject matter—namely, the amount of services that Conduent must subcontract to CFA[8] (Filing No. 35 at 4, 8–9; Filing No. 53 at 27).  Because CFA's unjust enrichment claim is not alleged in the alternative to its claim for breach of the Subcontract, CFA's unjust enrichment claim must be **dismissed**.

---

[8] The Court does not presently decide whether the Subcontract and MBE/WBE Provision cover the same subject matter.

### 2.   **Whether Dismissal with Prejudice is Appropriate**

The Court finds that dismissal of Count III would not be appropriate at this stage.  For the reasons explained above, Count III is subject to dismissal only because CFA's express allegations about the scope of the Subcontract in Count II preclude equitable recovery.  Because the Court is dismissing Count II with prejudice and denying CFA's Motion for Leave as to Count II, CFA's Second Amended Complaint may be able to properly plead Count III in the alternative to Count I. The Court therefore **dismisses** Count III **without prejudice**.

### 3.   **Whether Leave to Amend Should Be Granted**

As the Court explains above, neither the Prime Contract nor the Subcontract necessarily bars CFA's unjust enrichment claim. The only reason why Count III must be dismissed is because Count II in the Amended Complaint expressly alleges that the Subcontract covers the same subject matter as the MBE/WBE Provision. Because Count II is now dismissed with prejudice, it is no longer "*certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Runnion*, 786 F.3d at 519–20 (emphasis in original). In light of the liberal standard for amending pleadings, the Court **grants** CFA's Motion for Leave as to Count III.

### D.   **CFA's Request for Attorneys' Fees**

"A court may strike particular allegations if '[t]he Court unequivocally dismissed Plaintiff's claims based on these allegations with prejudice, thereby precluding Plaintiff from raising them again' in an amended complaint." *VitalGo, Inc. v. Kreg Trerapeutics, Inc.*, 370 F. Supp. 3d 873, 880 –81 (N.D. Ill. 2019) (citation omitted) (alteration in original)); *see* Fed. R. Civ. P. 12(f) (stating a court may strike "redundant, immaterial, impertinent, or scandalous matter").  The parties agree that CFA's request for fees and costs is based exclusively on a fee shifting provision in the Subcontract.  Because the Court has dismissed CFA's claim for breach of the Subcontract with prejudice, CFA no longer has any basis for seeking attorneys' fees or costs.  CFA's request for

attorneys' fees and costs is therefore **stricken**, and CFA's Motion for Leave is **denied as moot** as to CFA's request for attorneys' fees and costs.

### E.  <u>Conduent's Request for Attorneys' Fees</u>

The Subcontract provides that "[i]n the event of any claim, controversy, dispute, or litigation between the parties *arising out of or relating to this Subcontract*, the prevailing party will be entitled to recover from the losing party reasonable expenses, attorney fees and costs" (<u>Filing No. 35-2 at 11</u> (emphasis added)).  In its request for fees, Conduent contends that all of CFA's claims, not just the claim for breach of the Subcontract, arise out of or are related to the Subcontract (<u>Filing No. 59 at 16</u>–17).  Because the Court is not dismissing all claims with prejudice, an order awarding Conduent its fees would be premature.  The Court therefore **denies** Conduent's request for attorneys' fees, **without prejudice** to refile.

## IV.  <u>CONCLUSION</u>

For the following reasons, the Court **GRANTS** Conduent's Second Motion to Dismiss **without prejudice** as to some claims and **DENIES** Conduent's request for fees (<u>Filing No. 40</u>).  Count I is **DISMISSED without prejudice**, Count II is **DISMISSED with prejudice**, Count III is **DISMISSED without prejudice**, and CFA's request for attorneys' fees and costs is **STRICKEN**.

CFA's Motion for Leave to File Second Amended Complaint (<u>Filing No. 52</u>) is **GRANTED in part** as to Counts I and III only and **DENIED in part as moot** as to Count II and CFA's request for attorneys' fees and costs.  The **clerk is directed** to re-docket the proposed Second Amended Complaint submitted at <u>Filing No. 52-1</u>, and the Second Amended Complaint will become the operative pleading as of the date of this Entry.  Conduent is granted **thirty (30) days** to respond to Counts I and III, only, of the Second Amended Complaint or to file a motion to dismiss, if appropriate.

The Court also **DENIES as moot** CFA's Objection to Magistrate's Discovery Order (Filing No. 50), Motion to Stay Briefing on Second Motion to Dismiss Pending a Ruling on CFA's Objection to Magistrate's Discovery Order (Filing No. 51), Motion for Leave to File Reply Brief (Filing No. 60), and Objection to Magistrate' Judge's Briefing/Stay Order (Filing No. 61).

**SO ORDERED**.

Date: 4/29/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Riley H. Floyd
HOOVER HULL TURNER LLP
rfloyd@hooverhullturner.com

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Matthew S. Tarkington
LEWIS & KAPPES PC
mtarkington@lewis-kappes.com

Finis Tatum, IV
Hoover Hull Turner LLP
ftatum@hooverhullturner.com

Taylor Webster
Lewis Kappes, PC
TWebster@lewis-kappes.com